IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SEACORE MARINE, LLC, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| vs. | )    CIVIL ACTION NO. 14-0596-CG-C |
| | ) |
| C & G BOAT WORKS, INC., et al., | ) |
| | ) |
| | ) |
|     Defendants. | ) |

## ORDER

This matter is before the Court on Plaintiffs' motion for leave to file amended complaint (Doc. 86), Defendants' objections thereto (Docs. 89 & 91), and Plaintiffs' reply (Doc. 92). For the reason explained below, the Court finds that Defendants have not shown that substantial reason exists to deny leave to amend. Accordingly, Plaintiffs' motion will be granted.

Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." See FED. R. CIV. P. 15(a). "The thrust of Rule 15(a) is to allow parties to have their claims heard on the merits, and accordingly, district courts should liberally grant leave to amend when 'the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief.'" In re Engle Cases, 767 F.3d 1082, 1123 (11th Cir. 2014)(citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). The Eleventh Circuit recognized that Rule 15(a) "severely restricts" a district court's discretion to deny leave to amend. Sibley v. Lando, 437 F.3d 1067, 1073 (11th Cir. 2005).

"Unless a substantial reason exists to deny leave to amend, the discretion of the District Court is not broad enough to permit denial." Fla. Evergreen Foliage v. E.I. DuPont De Nemours and Co., 470 F.3d 1036, 1041 (11th Cir. 2006) (citation omitted).  Though the Court's discretion to grant motions for leave to amend is "liberal," the standard is "…not an unqualified license to fix every new defect as the court uncovers them." In re Engle Cases, 767 F.3d at 1123.  Leave to amend can be properly denied under circumstances of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Equity Lifestyle Properties, Inc. v. Fla. Mowing and Landscape Service, Inc., 556 F.3d 1232, 1241 (11th Cir. 2009) (citation omitted).

      Defendants in this case oppose the proposed amendment because Plaintiff is attempting to reassert claims similar to those that were previously dismissed by this Court.  Defendants argue that allowing the amendment would waste time and be futile, because Defendants would respond with a second motion to dismiss, which they contend should be granted.  "When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail." St. Charles Foods, Inc. v. Am.'s Favorite Chicken Co., 198 F.3d 815, 822-23 (11th Cir. 1999).  The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is

properly denied.  See, e.g., Burger King Corp. v. Weaver, 169 F.3d 1310, 1320 (11th Cir. 1999) (denial of leave to amend justified by futility when "complaint as amended is still subject to dismissal"); Florida Power & Light Co. v. Allis Chalmers Corp., 85 F.3d 1514, 1520 (11th Cir. 1996) (amendment is futile if cause of action asserted therein could not withstand motion to dismiss); Amick v. BM & KM, Inc., 275 F. Supp.2d 1378, 1381 (N.D. Ga. 2003) ("In the Eleventh Circuit, a proposed amendment is futile when the allegations of the proffered complaint would be unable to withstand a motion to dismiss.").  It follows that the burden is upon the defendants to demonstrate that the allegations of the proposed amended complaint would be unable to withstand a motion to dismiss.  When considering whether a claim has been stated, "the pleadings are construed broadly," and "the allegations in the complaint are viewed in the light most favorable to the plaintiff." Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007) (citations omitted).

Plaintiffs seek to amend their complaint to assert facts to support claims dependent on piercing the corporate veil against some of the corporate defendants in this action.  This Court previously found that Plaintiffs had not alleged facts in their original complaint that would support piercing the corporate veil. (Doc. 67).  In ruling on Defendants' motion to dismiss (Doc. 34), this Court dismissed all claims that were dependent on piercing the corporate veil (Doc. 67).  Specifically, this Court found that Plaintiffs had not alleged facts in their original complaint to support their conclusion that the other corporate defendants had misused their control over the contracting corporation.  When instrumentality or alto ego is the

basis for piercing the corporate veil, three elements are essential:

> 1) The dominant party must have complete control and domination of the subservient corporation's finances, policy and business practices so that at the time of the attacked transaction the subservient corporation had no separate mind, will, or existence of its own;
> 2) The control must have been misused by the dominant party. Although fraud or the violation of a statutory or other positive legal duty is misuse of control, when it is necessary to prevent injustice or inequitable circumstances, misuse of control will be presumed;
> 3) The misuse of this control must proximately cause the harm or unjust loss complained of.

Messick v. Moring, 514 So. 2d 892, 894-895 (Ala. 1987) (citation omitted). This Court, noting that heightened pleading is not necessary to support piercing the corporate veil claims, but that conclusory allegations must be supported by factual allegations, reasoned that the claims should be dismissed for the following reasons:

> [Plaintiffs] point out that it is possible to pierce the corporate veil of a group of commonly controlled entities where "control is misused such that veil piercing would be justified, resulting in harm to a third party." (Pls.' Resp. 17, Doc. 42)  While this legal theory is certainly true, Plaintiffs have failed to allege *facts* to support their theory—particularly as to the element of misuse.
>
> Misuse of control means "fraud or the violation of a statutory or other positive legal duty" although misuse will be presumed where "it is necessary to prevent injustice or inequitable circumstances." *Messick*, 514 So. 2d at 895.  The Complaint alleges no fraud or violation of statutory or legal duty, nor does it present facts amounting to injustice or inequity.  Regarding misuse, Plaintiffs argue that the Complaint "plausibly pleaded misuse of corporate control" in that "the Defendants have improperly received funds that rightfully belong to Plaintiffs and that the Defendants have improperly used the assets of one another." But "improper" is not synonymous with the foregoing definition of misuse. [FN 10 "Improper" receipt of funds or use of assets could encompass many scenarios—some consistent with misuse, some not. But allegations merely "consistent with liability" are not enough. *Iqbal*, 556 U.S. at 678.]

4

> Plaintiffs cite specific portions of the Complaint to demonstrate that they have pled the element of misuse. Upon closer examination, those facts are clearly insufficient. The first citation—paragraphs 75-78—refers only to Janson Graham's alleged misuse of C&G and makes no mention of the Related Entities. The next citation, paragraph 87, asserts "the Related Entities are commonly controlled and misused by Janson Graham and C&G." That conclusory statement is followed by allegations that C&G and the Related Entities: (1) have common ownership and/or control; (2) have common officers and/or directors; (3) have made cross-entity payments for employees, benefits and insurance; (4) have common and cross-entity funding; (5) improperly treat[ed] property and assets held by individual entities as common property and assets. (Compl. ¶ 87.)  The first two allegations are clearly examples of control, not misuse.  The next two allegations—cross-entity payments and common or cross-entity funding—provide no facts from which one could infer that the payments and funding were somehow "unfair, fraudulent, or otherwise not legitimate." *Heisz v. Galt Indus., Inc.*, 93 So.3d 918, 931 (Ala. 2012).  As to the final allegation, simply describing the common use of property and assets as "improper" does not provide factual support for the legal element of misuse.

(Doc. 67, pp. 9-11) (footnote 11 omitted).  This Court also found that allegations that the entities converted and/or sold property that belonged to Plaintiffs, cannot be used to support their piercing of the corporate veil claims as their "remedy is self-evident in Plaintiffs' claims for conversion and unjust enrichment", claims which are not premised on piercing the corporate veil, but on individual liability for their own actions. (Doc. 67, pp. 11, 14-15).

Plaintiffs' proposed amended complaint is 16 pages longer than the original complaint and includes many more factual allegations regarding the transferring and use of funds and property between the defendant corporate entities and Janson Graham. (Doc. 86-1).  Under a section labeled "Inter-Defendant Transactions and Activities," the amended complaint lists numerous payments or transfers of money

between the entities and points out differences in amounts paid by C&G for rent as compared to the amounts paid by Graham Gulf for rent. (Doc. 86-1, pp. 23-33). Plaintiffs allege that the "unjustified and unsupported fluctuation in the monthly rent Davenport charged C&G was unfair, fraudulent or otherwise not legitimate." (Doc. 86-1, ¶ 84). Plaintiffs also allege that the management fees charged to C&G "were far in excess of the market value for the services provided" and were unfair, fraudulent or otherwise not legitimate." (Doc. 86-1, ¶¶ 85, 86). Plaintiffs allege that C&G constructed vessels for Graham Gulf at costs lower than reasonable market rates and/or did not invoice or bill Graham Gulf for work performed by C&G on Graham Gulf vessels. (Doc. 86-1, ¶ 87). Janson Graham and Graham Gulf are alleged to have used funds belonging to C&G for their own benefit. (Doc. 86-1, ¶¶ 88-90, 92). C&G allegedly used progress payments made by Plaintiffs to satisfy a debt associated with a vessel C&G was constructing for another customer. (Doc. 86-1, ¶ 91). Janson Graham allegedly received significantly more in payroll in 2014, after it became apparent that C&G could not complete the hulls in accordance with the contracts with Plaintiffs. (Doc. 86-1, ¶ 93). From 2012-2014, Graham Holding paid more than $300,000 to Janson Graham in non-payroll payments and made non-rental payments to Davenport Properties of more than $2.4 million. (Doc. 86-1, ¶¶ 94-96). From 2012 to 2014, inconsistent with any ownership percentage interests, Davenport Properties paid Janson Graham at least $130,000, paid SLG Investments at least $2,579,000, and paid Silver King Golf Club, LLC $15,000. (Doc. 86-1, ¶¶ 97-99). The proposed amended complaint continues to detail additional

payments between the entities from 2013 to 2014, noting that several payments to C&G of amounts that were then paid out to the other entities the same day they were received. (Doc. 86-1, ¶¶ 100-104). Plaintiffs allege that all of these transactions were unfair, fraudulent or otherwise not legitimate.

Many of the newly proposed allegations are similar to the allegations contained in the original complaint in that they concern cross-entity payments and common or cross-entity funding. The Court is wary of allowing Plaintiffs to reassert claims that were dismissed based on a lack of factual support where the new factual allegations are simply more numerous. The Court found previously that simply describing the common use of property and assets as "improper" does not provide factual support for the legal element of misuse. Allegations that are merely "consistent with liability" are not enough. The question is whether the new allegations regarding cross-entity payments and common or cross-entity funding provide facts different from those previously offered and whether one could infer from those facts that the payments and funding were somehow "unfair, fraudulent, or otherwise not legitimate." After taking a close look at the newly proposed allegations, the Court finds that there are sufficient facts alleged from which a jury could infer that control was misused by the defendant parties.

The original complaint stated generally that Janson Graham had received funds and that there were cross-entity payments for employees, benefits and insurance and common and cross-entity funding. (Doc. 1, ¶¶ 75-77, 87). The proposed amended complaint provides many more detailed and specific facts

regarding alleged cross-entity payments and common or cross-entity funding. Plaintiffs also allege factual bases why such payments and funding were improper. For instance Janson Graham owns only 2% of Davenport Properties and its operating agreement requires any distributions to members to be made according to their respective ownership interests. (Doc. 86-1, ¶ 97). Yet Davenport Properties paid Janson Graham at least $130,000 directly. (Doc. 86-1, ¶ 97). The timing and the size of some of the alleged payments to Janson Graham and the related entities could also imply that they were improper. Janson Graham allegedly received $234,218 in payroll in 2014, which is more than $95,000 more than he received each of the prior two years. (Doc. 86-1, ¶ 93). Plaintiffs allege that this increase was after it became apparent that C&G could not complete the hulls in accordance with the contracts with Plaintiffs. (Doc. 86-1, ¶ 93). C&G allegedly paid Graham Holding far in excess of the market value, more than $4.1 million, for unreasonable and baseless management fees or management services. (Doc. 86-1, ¶¶ 85-86). C&G was charged unsupported fluctuating rates for rent by Graham Gulf that ranged from $77,000 to $40,000 per month. (Doc. 86-1, ¶¶83-84). Additionally, payments from C&G were made to a deer farm owned by family members, to pay for the mortgage on a condominium owned by Janson Graham's mother, to gardeners for Janson Graham's mother and to Silver King Golf Club employees. (Doc. 86-1, ¶¶ 89, 90, 92). The allegations imply that Janson Graham controls and operates all of the corporate entities for his own benefit and at times charged C&G commercially unreasonable amounts for services without documentation or justification. As a

result, C&G's funds were allegedly depleted and C&G was unable to fulfill its contractual obligations and is now without assets sufficient to meet its obligations.

The Court finds that the proposed amended complaint sufficiently alleges misuse of control that proximately caused the harm or unjust loss complained of. At this stage, the Court will not delve further into the parties' factual disputes; as such issues are reserved for the summary judgment stage. Flowers v. Patrick, 869 F. Supp. 2d 1331, 1333 (M.D. Ala. 2012). Accordingly, the Court finds that Defendants have not shown that the amended complaint could not survive Rule 12(b)(6) scrutiny.

Defendants also assert that allowing the amendment at this time would be prejudicial to all parties in interest. Defendants essentially contend that the amendment is prejudicial because the claims are due to be dismissed, which the Court addressed above, and because of the timing of the amendment. Generally, the passage of time alone is insufficient to deny a leave to amend, however "*undue delay* may clearly support such a denial." Hester v. Int'l Union of Operating Eng'rs, 941 F.2d 1574, 1578–79 (11th Cir. 1991) (citations omitted); see also Floyd v. E. Airlines, Inc., 872 F.2d 1462, 1490 (11th Cir. 1989) ("The mere passage of time, without anything more, is an insufficient reason to deny leave to amend."), rev'd on other grounds, 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991). Indeed, "undue delay" is often heavily dependent on the prejudice that might result if the motion were granted. See, e.g., In re Engle Cases, 767 F.3d 1082, 1118-19 (11th Cir. 2014)("It is true that in evaluating the tardiness of a motion to amend, courts

typically focus on the prejudice that would result if the motion were granted."); see also Bryant, 252 F.3d at 1165 ("Because there is no evidence that allowing an amendment at this stage would prejudice the defendants, the district court should have allowed the plaintiffs to amend their complaint."). Here, Plaintiffs' motion to amend was timely filed within the deadline set by the Supplemental Rule 16(b) Scheduling Order in this case. (Doc. 85). The Court finds that Defendants have not shown that any delay in moving to amend was "undue" or that allowing an amendment at this stage would prejudice the Defendants.

For the reason explained above, the Court finds that Defendants have not shown that substantial reason exists to deny leave to amend. Accordingly, Plaintiffs' motion for leave to file amended complaint (Doc. 86), is **GRANTED.**

The Clerk is directed to docket the First Amended Complaint attached as an exhibit to Doc. 86. The Parties are further directed to meet, confer and file a supplemental Rule 26(f) report within 14 days of today's date as required by Judge Cassady's Order dated November 10, 2015 (Doc. 127).

**DONE and ORDERED** this 3rd of March, 2016.

/s/ Callie V.S. Granade
**UNITED STATES DISTRICT JUDGE**